COMMONWEALTH *vs*. WILLIAM ROSADO. No. 01-P-1570. September 15, 2003. *Assault by Means of a Dangerous Weapon. Joint Enterprise. Evidence*, Joint enterprise.

The defendant appeals from his conviction in Boston Juvenile Court of assault by means of a dangerous weapon on the ground that the evidence was insufficient to convict him under a theory of joint venture.

The jury could have found the following facts. On March 27, 2000, Lewis Lopez, a Boston police cadet, was returning to his Roslindale apartment after finishing his shift at the Boston police juvenile detention center. At 10:50 P.M., as he left a Massachusetts Bay Transportation Authority bus, he noticed a group of four to six individuals "hanging out" on a bench at the bus stop across the street. Lopez wanted to avoid the group because he was unsure whether any of them had ever been in the detention center. To get to his apartment in the Beechland Street housing development, however, Lopez had to walk past the group. As he was walking by, the defendant stood up on a bench and said, "Yo, he's from the projects."

With that, the group began to follow Lopez. One, James Haygood, emerged from the group, walked in front of Lopez, and pulled out a handgun from his waistband. The group remained about ten to fifteen feet behind Lopez. Haygood "racked"[1] the gun and started moving toward Lopez gesturing as if ordering Lopez forward. At that moment, one of the other men in the group behind Lopez stated, "Someone's going to get shot tonight."

Lopez reached into his back pocket, trying to make Haygood think that he was also armed. Haygood kept walking toward him. Lopez then pulled out his wallet and displayed his police cadet badge. Upon seeing the badge, Haygood said to the group, "Yo, he's Five-O," meaning that Lopez was a police officer. Haygood then put the gun back into his waistband, walked past Lopez, and rejoined the group. Lopez resumed walking to his apartment. The group followed him for a short distance, but then stopped and headed back toward the bus stop.

Shaken from the incident, Lopez hurried to his apartment, got his police-issued radio, took his girlfriend's car and drove out in search of the group with the intent to radio the police once he found them. After a short search, Lopez spotted the group coming out of the Roslindale Food Mart. He went

---

[1]Racking consists of pulling the slide back on an automatic handgun to load a bullet into the chamber.

into the store and talked to a clerk who told him that the store had a surveillance camera that videotaped the store's patrons. Lopez watched the tape while in the store, and saw that the defendant, Haygood, and the rest of the group had entered the store together. Lopez asked the clerk to hold the tape for the police. His attempt to contact the police at that time was unavailing because his radio was not functioning. He reported the crime the next morning and viewed the surveillance tape with police officers from the area police station.

This evidence was sufficient for a conviction; viewed in a light most favorable to the Commonwealth, it was enough to satisfy a rational trier of fact of each element beyond a reasonable doubt. *Commonwealth* v. *Latimore*, 378 Mass. 671, 677-678 (1979). To support a conviction under a joint venture theory, the Commonwealth must prove that the defendant was "(1) present at the scene of the crime, (2) with knowledge that another intends to commit the crime or with intent to commit a crime, and (3) by agreement is willing and available to help the other if necessary." *Commonwealth* v. *Maynard*, 436 Mass. 558, 564 (2002), quoting *Commonwealth* v. *Ortiz*, 424 Mass. 853, 856 (1997). There is no dispute that the defendant was present at the scene of the assault. Moreover, a jury could reasonably infer that the defendant had the requisite knowledge of Haygood's intentions. He was with Haygood before, during, and after the crime. That included staying with him after he had displayed the gun, cocked it, and someone had said, "Someone's going to get shot tonight." Indeed, a jury could infer that the defendant actually targeted Lopez when he stated, "Yo, he's from the projects," thus initiating the pursuit. Compare *Newman* v. *Commonwealth*, 437 Mass. 599, 602-604 (2002); *Commonwealth* v. *Amaral*, 13 Mass. App. Ct. 238, 243-244 (1982). It was also inferable that the defendant was willing and able to help Haygood. He stayed with the group that followed Lopez, in effect trapping Lopez by standing behind him while Haygood stood in front of him. Furthermore, a jury could also find that the defendant and the rest of the group effectively helped Haygood escape by allowing him to rejoin the group and walking off with him. Compare *Commonwealth* v. *Santos*, 402 Mass. 775, 787 (1988).

Finally, there is no merit to the defendant's contention that the judge erred by permitting a police officer, Detective Rogers, to testify that Lopez stated to him on the day after the incident, contrary to Lopez's trial testimony, that the defendant was the one who said, "Someone's going to get shot tonight." First, the record does not show that the judge could have known what Rogers's answer was to be; to be preserved, the objection should have been renewed by a motion to strike. Liacos, Brodin & Avery, Massachusetts Evidence § 3.8.1-3 (7th ed. 1999). Compare *Commonwealth* v. *Cancel*, 394 Mass. 567, 570-571 (1985). Second, while Lopez's prior contrary statement could not be given substantive weight without violating the principles set out in *Commonwealth* v. *Daye*, 393 Mass. 55, 60-62 & n.8 and 9 (1984), the judge later instructed the jury that such a statement could only be considered as it bore on the witness's credibility. As to the failure of the instruction to identify Lopez's testimony, see *Commonwealth* v. *Rosadilla-Gonzalez*, 20 Mass. App. Ct. 407, 413 (1985). If there was error in admitting the statement subject to the limiting instruction, given the lack of proper objection we would ask whether there was a substantial risk of a miscarriage of justice. The answer would be negative due to the over-all strength of the prosecution's case. No question was

raised that the incident occurred, that the defendant was one of the group that followed Lopez, or that it was the defendant who directed the group's attention to Lopez as someone "from the projects."

*Judgment affirmed.*

*Thomas J. McCarthy* for the defendant.

*Franco J. Gobourne,* Assistant District Attorney, for the Commonwealth.