## COMMONWEALTH vs. VICTOR ZAVALA.

No. 98-P-2114.

Hampden. June 7, 2000. - October 10, 2001.

Present: BROWN, SMITH, & GREENBERG, JJ.

*Controlled Substances. Practice, Criminal,* Motion to suppress, Hearsay, Argument by prosecutor, Reopening of evidence, Required finding. *Evidence,* Hearsay, Expert opinion. *Rules of Criminal Procedure.*

At a criminal trial, the judge properly refused to consider a motion to suppress evidence, where the defendant's affidavit supporting the motion set forth allegations that were general and not particular, and where the affidavit contained no facts in support of any of the allegations. [772-774]

At a criminal trial, the testimony of a police officer as to specific details of his conversation with another officer that led to the arrest of a suspect was improperly admitted, but the error was not prejudicial because the testimony was cumulative and did no further harm. [774-775]

At the trial of an indictment alleging possession of cocaine with intent to distribute, the testimony of a police officer that the actions of the defendant and another person were consistent with a drug transaction was proper expert testimony, where the testimony explained the actions, used an acceptable locution, and did not opine as to the defendant's innocence or guilt; the officer's testimony that, in his opinion, the defendant was stashing narcotics was error, but did not create a substantial risk of a miscarriage of justice, in light of the strength of the Commonwealth's case. [775-776]

At a criminal trial, the prosecutor's remarks during closing argument improperly vouched for the credibility of a witness, but prompt action by the trial judge avoided reversible error. [776-777]

This court rejected the argument that a criminal trial for possession of cocaine with intent to distribute included several errors which, although individually insufficient to require reversal, cumulatively presented a substantial risk of a miscarriage of justice. [777]

At the trial of an indictment alleging a second offense of possession of cocaine with intent to distribute, the judge committed prejudicial error in allowing the Commonwealth to reopen its case after both sides had rested and after the defendant had moved for a required finding of not guilty, in order to prove an essential element of the offense charged, that the defendant was the same person who had previously been convicted of narcotic charges. [777-779]

INDICTMENTS found and returned in the Superior Court Department on December 5, 1996.

A motion to suppress evidence was considered by *Constance M. Sweeney*, J., and the cases were tried before her.

*Rodney S. Dowell* for the defendant.

*Dianne M. Dillon*, Assistant District Attorney, for the Commonwealth.

SMITH, J. On December 5, 1996, a Hampden County grand jury returned indictments charging the defendant with the unlawful distribution of cocaine, second offense, pursuant to G. L. c. 94C, § 32A(*d*), and possession of cocaine with intent to distribute, second offense, pursuant to G. L. c. 94C, § 32A(*b*). After a jury trial, the defendant was convicted of the substantive portions of both indictments. The second offense portion of the indictment charging possession with intent to distribute was then tried before the same jury, pursuant to G. L. c. 278, § 11A, and the jury returned a verdict of guilty.[1]

On appeal, the defendant claims that the judge committed error in (1) refusing to hear the defendant's motion to suppress evidence; (2) allowing improper hearsay in evidence; and (3) allowing improper expert testimony. The defendant also contends that the prosecutor committed reversible error in his closing argument. According to the defendant, all of these errors had a cumulative effect of depriving him of a fair trial. Finally, the defendant contends that during the second offense trial, the judge improperly allowed the Commonwealth to reopen its case-in-chief after both parties had rested.

We summarize the evidence introduced by the Commonwealth. On the morning of November 8, 1996, a Springfield police officer, Pablo Diaz, was conducting surveillance for drug sales from an unmarked vehicle parked on Jefferson Avenue in Springfield. He observed the defendant walk from the side of an apartment building located at 21 Jefferson Avenue to the sidewalk. A Hispanic male, later identified as Jose Fargas, walked up the driveway and engaged the defendant in conversation. The two men then walked toward the rear of the building where the defendant reached toward a garden hose and pulled out a clear plastic bag. Diaz next observed the

---

[1]The Commonwealth filed a nolle prosequi on the second offense portion of the unlawful distribution charge.

defendant pull a small white item out of the larger plastic bag. The defendant then threw the small white item to Fargas, who caught it in his hand and walked back out to the sidewalk. Diaz did not see any money exchanged between the defendant and Fargas.

As Fargas proceeded down the street, Diaz observed him open the bag with the white item, put it up to his nose, and sniff it. Fargas then resealed the bag and put it into his left sock. . Diaz radioed his observations to other police officers who were supporting his surveillance efforts.

As a result of Diaz's transmission, Officer Donald Quinn stopped Fargas and searched Fargas's left sock and found a clear plastic bag containing a white powder, later identified as cocaine. The top corner of the bag had been ripped open.

Meanwhile, Diaz observed the defendant return the larger plastic bag to the hose. The defendant then entered the passenger seat of a pick-up truck that had pulled into the driveway. Diaz followed the truck to a restaurant. After the defendant left the restaurant, he was arrested. He had $130 dollars in cash in his possession.

Other police officers returned to 21 Jefferson Avenue and conducted a search of the hose area. They found a plastic bag containing six individually wrapped bags of a white powder, later identified as cocaine.

1. *Refusal to hold suppression hearing.* On February 12, 1997, the defendant filed a motion to suppress evidence seized as a result of the warrantless searches of Jose Fargas, the area adjacent to 21 Jefferson Avenue, and the defendant himself. The defendant failed to attach an affidavit in support of this motion. On May 22, 1997, one day after a suppression hearing on this motion had been scheduled, but had not been held, the defendant filed an affidavit. On February 20, 1998, the day of trial, defense counsel sought a hearing on the suppression motion. The trial judge questioned defense counsel as to why the affidavit had not been timely filed and why the motion had not been heard when scheduled.[2] The judge also determined that the affidavit

---

[2]Trial counsel told the trial judge that during his prior court appearances, another Superior Court judge had stated that the suppression motion could be

was inadequate. Therefore, the judge ruled that there was an "insufficient basis to proceed" on the suppression motion and declined to hear it.

On appeal, the defendant argues that the judge should have excused the affidavit's lack of detail because the defendant was not present during the searches of Fargas and the area adjacent to 21 Jefferson Avenue and therefore could not possibly have produced an affidavit with sufficient particulars based upon personal knowledge.

Under Mass.R.Crim.P. 13(a)(2), 378 Mass. 871 (1979), a suppression motion must state the grounds on which it is based "with particularity . . . . In addition, an affidavit detailing all facts relied upon in support of the motion and signed by a person with personal knowledge of the factual basis of the motion shall be attached." See *Commonwealth* v. *Robles*, 48 Mass. App. Ct. 490, 491 n.1 (2000).

A judge is not obligated to consider a suppression motion that does not meet the requirements of rule 13. *Commonwealth* v. *Pope*, 15 Mass. App. Ct. 505, 507 (1983). Thus, a judge may refuse to consider a suppression motion if the allegations in the motion are general and not particular or if the supporting affidavit does not contain any facts with respect to an allegation in the motion. *Ibid. Commonwealth* v. *Parker*, 412 Mass. 353, 356 & n.9 (1992).

Here, the defendant's motion set forth a veritable laundry list of possible grounds for suppression of the evidence seized pursuant to the searches at issue.[3] The allegations, however, were general and not particular, and the defendant's affidavit

---

heard at the time of trial, provided the defendant would waive his right to an interlocutory appeal, in the event of an adverse ruling. The trial judge rejected that explanation, noting that, despite the fact that the case was set for trial on numerous dates prior to February 20, the record contained no indication that the motion was to be heard at the time of the trial or that the defendant had waived his right to an interlocutory appeal.

[3]The motion alleged that "said evidence was not seized pursuant to a lawful arrest, was not in plain view, there was no probable cause, no warrant, no exigent circumstances, it was not seized pursuant to a lawful stop-and-frisk, the search was not consented to, and the evidence was seized in violation of the Fourth and Fourteenth Amendments to the Constitution of the United States, Article 14 of the Declaration of Rights of the Constitution of the Commonwealth of Massachusetts, and M.G.L. c. 276."

contained no facts in support of any of the allegations, even the allegations concerning the search of his person.[4] Thus, the defendant did not meet his initial burden of complying with the rule. Therefore, we hold that in these circumstances, the judge did not abuse her discretion in refusing to hear the defendant's suppression motion.

In any event, if the judge had held a hearing on the defendant's motion, the motion would have been denied because the observations of the police, alone, provided probable cause. Also, the defendant may not have had standing to challenge the search of Fargas, see *Commonwealth* v. *Morrissey*, 422 Mass. 1, 5-6 (1996), nor did he have a reasonable expectation of privacy in the hose adjacent to the driveway, see *Commonwealth* v. *A Juvenile (No. 2)*, 411 Mass. 157, 160-161 (1991), and the police were entitled to search the defendant at the time of his arrest. See G. L. c. 276, § 1.

2. *Admission of hearsay evidence.* Over the defendant's objections, Officer Quinn was permitted to testify that, prior to stopping Fargas, he received a radio transmission from Officer Diaz directing him to watch for "a Hispanic male wearing a brown jacket, brown pants and black shoes" and informing him that this individual had "placed an item in his left sock." In both instances, the judge immediately instructed the jury that the testimony was not offered for its truth but rather to explain why Officer Quinn took certain actions.

It has been held that police officers may explain what they have done as a result of conversations with others. *Commonwealth* v. *Perez*, 27 Mass. App. Ct. 550, 554 (1989), citing *Commonwealth* v. *Cordle*, 404 Mass. 733, 743-744 (1989). Nevertheless, "the specific details are seldom needed and

---

[4]In his affidavit, the defendant swore:

"1. I am the defendant in the above case.

"2. On 8 November, 1996, officers of the Springfield Police Department stopped and searched Jose A. Vargas, an area adjacent to 21 Jefferson Avenue, Springfield, Massachusetts, and my person.

"3. During the course of those searches, a quantity of what is alleged to be a controlled substance was seized as well as other items. While in custody and in response to questions directed at me by the arresting officers, I made certain statements.

"4. Subsequently, I was charged with the above captioned indictments."

present the likelihood of serious prejudice." *Commonwealth* v. *Soto*, 45 Mass. App. Ct. 109, 113 (1998). *Commonwealth* v. *Rosario*, 430 Mass. 505, 510 (1999).

Here, it was error to allow Quinn to testify as to specific details of his conversations with Diaz. However, the error was not prejudicial because Diaz had already testified not only to his observations of Fargas, but also that he had radioed that information to Quinn. Therefore, Quinn's testimony "was cumulative and did the defense no further harm." *Commonwealth* v. *Stoico*, 45 Mass. App. Ct. 559, 564 (1998).

3. *Opinion testimony.* The defendant argues that Officer Diaz, testifying as an expert, improperly commented on the defendant's guilt.[5]

Expert testimony is generally admissible even if the testimony touches on the ultimate issues before the jury. *Commonwealth* v. *Woods*, 419 Mass. 366, 374-375 (1995). An expert may not, however, offer an opinion as to the defendant's innocence or guilt. *Commonwealth* v. *Hesketh*, 386 Mass. 153, 161 (1982). Testimony that the defendant's actions were "consistent with" a drug transaction has been permitted. *Commonwealth* v. *Johnson*, 410 Mass. 199, 202 (1991). But see *Commonwealth* v. *Tanner*, 45 Mass. App. Ct. 576, 580 (1998) (commenting on danger inherent in the use of opinion testimony of a percipient witness).

Here, Officer Diaz testified that, based on his training and experience, the actions of the defendant and Fargas were consistent with a drug transaction, and that the actions of Fargas in opening the bag and sniffing from it were consistent with the ingestion of certain types of narcotics. Because Officer Diaz's testimony explained Fargas's actions, used an acceptable locution, and did not opine as to the defendant's innocence or guilt, his testimony was proper expert testimony.

Officer Diaz, after defining the meaning of a drug "stash," also testified that, in his opinion, the defendant was stashing

[5]Although Diaz was never specifically qualified by the judge as an expert, it may be inferred that the judge had accepted Diaz as an expert witness in view of the inclusion of an instruction on expert testimony in the final instructions to the jury. In any event, Diaz was a qualified expert and the defendant does not argue otherwise.

narcotics in the hose area. Such testimony is similar in nature to that held improper in *Commonwealth* v. *Woods*, 419 Mass. at 375 & n.13. However, although such testimony was error, it did not create a substantial risk of a miscarriage of justice, in light of the strength of the Commonwealth's case.

4. *The prosecutor's closing argument.* The defendant claims that the prosecutor improperly vouched for the credibility of Officer Diaz in closing argument.[6] The defendant further argues that the prosecutor compounded this transgression by arguing that, in order to acquit, the jury would have to disbelieve all the police officers who testified on behalf of the Commonwealth. Because the defendant did not object to the prosecutor's argument at trial, we review only to determine whether the alleged errors, if any, created a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Marangiello*, 410 Mass. 452, 465 (1991).

Remarks made during closing argument are viewed in the context of the entire argument, and in light of the judge's instruction to the jury and the evidence at trial. *Commonwealth* v. *Yesilciman*, 406 Mass. 736, 746 (1990). A prosecutor is free to argue that a witness is credible, but may not explicitly or implicitly vouch to the jury that the prosecutor knows that the witness's testimony is true. *Commonwealth* v. *Ciampa*, 406 Mass. 257, 265 (1989). *Commonwealth* v. *Chavis*, 415 Mass. 703, 713 (1993).

The main focus of defense counsel's closing argument was that the police fabricated the evidence. Counsel invited the jury to disbelieve the testimony of all of the police officers, especially Officer Diaz. "When a witness's credibility has been attacked, it is entirely proper for the prosecutor to respond and to argue from the evidence why the witness should be believed." *Commonwealth* v. *Hardy*, 431 Mass. 387, 396 (2000). Here, the overall thrust of the prosecutor's argument was to invite the

---

[6]The prosecutor argued, "I'm going to suggest to you, ladies and gentlemen, that the truth lies with the police officers who testified in this case. Indeed [defense counsel] told you in his opening statements that the whole case rested on Pablo Diaz and the credibility of Pablo Diaz. I'm going to echo that thought, I believe that to be the case, too. I believe Pablo Diaz—"

The trial judge immediately interrupted the prosecutor's argument and stated "no statements of personal belief."

jury to determine the credibility of the witnesses. See *Commonwealth* v. *Stewart*, 411 Mass. 345, 357 (1991), citing *Commonwealth* v. *Nicholson*, 20 Mass. App. Ct. 9, 18 (1985). Although the prosecutor transgressed the line when he began the remarks quoted in note 6, *supra*, prompt action by the trial judge avoided reversible error.

5. *Cumulative errors.* After review of the entire record, we reject the defendant's argument that there were several errors which, although individually insufficient to require reversal, cumulatively "present a substantial risk of miscarriage of justice." *Commonwealth* v. *Colantonio*, 31 Mass. App. Ct. 299, 314 (1991). See *Commonwealth* v. *Andrews*, 403 Mass. 441, 464 (1988). Contrast *Commonwealth* v. *Cancel*, 394 Mass. 567, 576 (1985).

6. *Reopening of Commonwealth's case in trial of second offense portion of indictment.* During the trial of the second offense portion of the indictment, the Commonwealth presented evidence from a police officer that in 1990 he arrested Victor Zavala, born June 26, 1964, on charges of possession of cocaine with intent to distribute and conspiracy. The Commonwealth rested after placing in evidence documents certifying that Victor Zavala had been convicted of possession with intent to distribute a Class B substance. The defendant also rested and filed a motion for a required finding of not guilty on the grounds that the Commonwealth had failed to produce any evidence that the defendant, Victor Zavala, was the same person who had been arrested and convicted in 1990.

Before ruling on the defendant's motion, the trial judge, sua sponte over the defendant's objection, allowed the Commonwealth to introduce evidence showing that the defendant was indeed the same individual who had been arrested and convicted for narcotic offenses. The trial judge then denied the defendant's motion and the defendant was found guilty on the subsequent offense indictment. On appeal, the defendant argues that the judge committed prejudicial error in allowing the Commonwealth to reopen its case after both sides had rested and the defendant had filed a motion for a required finding of not guilty.

It has been held that a trial judge has a measure of discretion in deciding whether to allow the Commonwealth to reopen its

case after it has rested. See *Commonwealth* v. *Ierardi*, 17 Mass. App. Ct. 297, 302-303 (1983) (proper to allow Commonwealth to reopen case before defendant began defense so Commonwealth could present prior stipulation of identification by defense counsel); *Commonwealth* v. *Burke*, 20 Mass. App. Ct. 489, 512 (1985) (proper to allow Commonwealth to reopen case before defendant began his defense because Commonwealth had not fully rested in that judge had not complied with Commonwealth's request that he take judicial notice of statutes and read them to jury). See also *Commonwealth* v. *Cote*, 15 Mass. App. Ct. 229, 238-242 (1983). In *Cote*, the defendant was charged with the use of unmetered gas without the written consent of the supplier, the city of Holyoke gas and electric department. At the close of the Commonwealth's case, the defendant moved for a required finding of not guilty on the ground that the Commonwealth failed to produce evidence concerning the supplier's lack of consent. The trial judge allowed the Commonwealth to reopen its case to present that evidence. The court held that there was no error because "the Commonwealth's failure to provide evidence of lack of consent stemmed from a good faith belief that the initial burden of production lay with the defendant, an issue of some legal complexity." *Id.* at 242.

Here, we do not have an issue of "some legal complexity." As the Commonwealth acknowledges, it was required to prove, as an essential element of the offense charged, that the defendant, Victor Zavala, was the same Victor Zavala who had been previously convicted of narcotic charges. *Commonwealth* v. *Koney*, 421 Mass. 295, 301-302 (1995) (defendant's motion for required finding of not guilty should have been allowed where at trial of subsequent offense portion of indictment Commonwealth did not establish defendant's identity as person who had been previously convicted).

The Massachusetts Rules of Criminal Procedure state in pertinent part: "The judge on motion of a defendant . . . shall enter a finding of not guilty of the offense charged in an indictment or complaint or any part' thereof after the evidence on either side is closed if the evidence is insufficient as a matter of law to sustain a conviction on the charge." Mass.R.Crim.P.

25(a), 378 Mass. 896 (1979). Here, the evidence was clearly insufficient as matter of law as to the identity of the defendant being the person previously arrested for narcotic offenses. In these circumstances, we hold that the trial judge committed prejudicial error in allowing the Commonwealth to reopen its case. To hold otherwise would allow the Commonwealth always to be able to repair its case after both sides had rested, therefore reducing rule 25(a) to a nullity.

The judgments on the counts charging unlawful distribution of cocaine and possession of cocaine with intent to distribute are affirmed. The judgment on the second offense charge of possession with intent to distribute is reversed, the verdict is set aside, and judgment is to be entered for the defendant.

*So ordered.*